WICKER, Judge.
This appeal arises from a claim for damages filed on behalf of Roger Wahden (Wahden), plaintiff/appellant, against Christopher Sanders, defendant/appellee[1] for damages allegedly sustained as the result of a rear-end collision caused by defendant Christopher Sanders’ vehicle on March 2, 1984. The matter was tried before a jury which found that Christopher Sanders[2] was negligent; however, the jury concluded that his fault was not a proximate cause of the damages sustained by the plaintiff. Wahden now appeals. We affirm.
On March 2, 1984, Wahden’s van was struck from the rear by a vehicle driven by Wilda Jean Jay who was hit by a van driven by Wallace Weeks (Weeks) as the result of a chain reaction which began when Christopher Sanders struck Weeks’ *863 van, the first of four vehicles involved in this collision. Christopher Sanders, who was 15 at the time of the accident, was driving a car owned by his mother, Carolyn Sanders. The Sanders’ vehicle was insured by Allstate Insurance Company.
Wahden presented a history of four prior accidents which caused injury. Moreover, he related to Dr. Wayne C. McClendon (McClendon), his chiropractor, two other prior incidents which caused him pain; namely, a January 3, 1984 incident in which he attempted to change a fuel pump on his car, and a March 1, 1984 incident in which he carried his daughter on his shoulders at a parade.
Wahden now appeals that adverse judgment denying him recovery for any damages and asserts the following specification of error:
That the finding of fact by the jury in this matter and hence the verdict of the trial court constitutes manifest error due to the disregard by the jury of the evidence presented and the instruction[3] given by the judge at trial.
Our Louisiana Supreme Court held in Coleman v. Victor, 326 So.2d 344, 348 (La.1976) that “[i]t is well settled that plaintiff has the burden of proving by a preponderance of the evidence damages caused by defendant’s fault.”
The jury evidently concluded that Wah-den did not receive injuries beyond those he already sustained in earlier accidents or incidents; nor did he suffer any exacerbation of the earlier injuries in the March 2, 1984 accident. In reaching this conclusion the jury had the benefit of medical experts.
The medical experts who testified on behalf of Wahden were McClendon, a chiropractor, and Dr. Kenneth Vogel (Vogel), a neurosurgeon. The deposition testimony of Dr. David H. Jarrott (Jarrott), a neurosurgeon, was also introduced into evidence; however, Jarrott last examined Wahden on September 23, 1983. He did not see Wah-den following the March 2, 1984 accident. Dr. Russell Grunsten (Grunsten), an orthopedic specialist, testified on behalf of the defense.
The record in the instant case consists of conflicting testimony taken in open court in the presence of the jury and one deposition of a medical expert taken out of the presence of the jury. With regard to the testimony adduced at trial, we follow the standard of review set forth in Canter v. Koehring Company, 283 So.2d 716 (La.1973) and its progeny.
In Canter, supra, the Louisiana Supreme Court held that:
[w]hen there is evidence before the trier of fact which upon its reasonable evaluation of credibility, furnishes a reasonable factual basic for the trial court’s finding, on review the appellate court should not disturb this factual finding in the absence of manifest error ... the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluation and inferences are as reasonable. The reasons for this well-settled principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses (as compared with the appellate court’s access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts. [Emphasis applied; Citations omitted] Id. at 724. See also, Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
*864 Moreover, we have applied the Canter standard in instances where there are differing medical opinions presented at trial. Cross v. Hingle, 475 So.2d 1384 (La.App. 5th Cir.1985); Long v. St. Paul Fire and Marine Ins. Co., 487 So.2d 732 (La.App. 5th Cir.1986). We have also applied the Canter standard in cases in which the jury is the trier of fact. Antonatos v. Hampton, 480 So.2d 1029 (La.App. 5th Cir.1985), writ denied 482 So.2d 630 (La.1986).
In Jefferson, supra the court considered a case before a jury in which although the defendant was found to be at fault, as in the instant case, the plaintiffs had failed to meet their burden of proof that they sustained damages which were caused by the defendant’s tortious act. The Jefferson court held that:
[t]he determination of credibility is properly allocated to the trier of fact (the jury). When that determination is reviewed by an appellate court, reasonable inferences of fact supported by the evidence in the record are not to be disturbed even though there may be other reasonable inferences of fact also supported by the evidence See Williams v. Allstate Insurance Company, 367 So.2d 1318 (La.App. 4th Cir.1979). Jefferson, supra at 353.
However, when we review factual findings which are based upon a deposition, the Canter standard is inappropriate since the jury is not in a better position than an appellate court to assess the credibility of the witness. Cheramie v. Board of Trustees, 482 So.2d 742 (La.App. 1st Cir.1985), writ denied, 486 So.2d 734 (La.1986).
Therefore,
[w]hen evaluating depositions rather than live testimony we must determine the sufficiency and preponderance of the evidence. Hayes v. Commercial Union Assurance Company, 459 So.2d 1245 (La.App. 1st Cir.1984), writ denied, 462 So.2d 1247 (La.1985); Gould v. State, Through Department of Corrections, 435 So.2d 540 (La.App. 1st Cir. [1983], writ denied, 438 So.2d 1107 (La.1983). Cheramie, supra at 747.
See also Brousseau v. Tucker, 479 So.2d 446 (La.App. 1st Cir.1985); Foster v. Chambers Const. Co., Inc., 489 So.2d 1311 (La.App. 1st Cir.1986), writ denied, 493 So.2d 643 (La.1986).
At the outset we note that Jarrott’s deposition testimony is insufficient to establish by a preponderance of the evidence a causal connection between the March 2, 1984 accident and any injuries which were allegedly sustained by Wahden since Jarrott never examined Wahden following the accident at issue.
Mindful of the Canter, supra standard and its progeny, we now turn to the conflicting evidence presented at trial.
Both Wahden and McClendon testified that despite the fact that Wahden had not been released from McClendon’s care for prior accidents, Wahden had showed significant improvement just prior to the accident at issue. Although McClendon testified that he examined Wahden the morning of the accident in the instant case and prior to that accident, he found that Wahden was doing better. He concluded that Wahden was doing better immediately prior to the March accident despite the fact that he also testified that Wahden related to him that he suffered pain the night before as the result of carrying his daughter on his shoulders.
In addition, although both McClendon and Wahden admitted to numerous visits during the months of January and February, 1984, they asserted that Wahden was actually doing better the morning of the accident at issue, prior to that accident. McClendon did admit, however, that Wah-den never fully recovered from the prior accident of January 31, 1983.
Vogel testified that he performed an anterior cervical fusion on Wahden on November 9, 1977. He related that Wahden suffered a 10 to 15% permanent impairment of the body as a whole following the surgery. Vogel examined Wahden on March 15, 1984, approximately two weeks after the accident at issue. After examining him on that date he concluded that Wahden probably had an acute muscular injury superimposed on his old injury. He *865 testified that Wahden had suffered “multiple aggravations of pre-existing conditions.”
Interestingly, although Wahden testified that he saw physicians at East Jefferson Hospital following the March 2, 1984 accident, he introduced no ambulance bill or medical bills into evidence from these sources. In addition, he stated that the physicians could find no damages on the x-rays they took and sent him home. These physicians further advised him to return to his chiropractor.
On the other hand, Grunsten, the expert for the defense, could not explain Wah-den’s symptoms. He examined Wahden on three occasions following the March accident. In addition, he had the benefit of an EMG and nerve conduction study performed by Dr. Freeman on November 5, 1985 which showed no abnormalities in any of the muscle functions of the upper extremities. Although Dr. Freeman concluded that there was some suggestion of interference in nerve conduction in the wrist which could suggest Carpel Tunnel Syndrome, Grunsten considered this condition to only be a possibility. No testimony was illicited from Grunsten regarding any alleged causal relationship between Carpal Tunnel Syndrome and the March accident.
Grunsten concluded that:
It was my opinion that the patient presented no objective evidence of active nerve irritation and in the neck region that I can identify. There was no identifiable spasms in the muscles of the shoulders. That the degree of restriction of motion in the neck region was variable from the examination to x-ray taking. No significant change in the skeletal makeup of the neck region could be identified. There was no identifiable spasm in the neck muscles or shoulders. That the degree of restriction of motion in the neck region was variable from examination to x-ray taking. There was no significant change in the skeletal makeup of the neck region could be identified and compared to our current x-ray studies as • compared to our previous studies. On the basis of these considerations, / was unable to identify any definite evidence of injury or disease residual here other than the manifestations of the pre-ex-isting fusion of the interbody interval between the fourth and fifth vertebra that was clear on x-ray. [Emphasis supplied.]
The jury evidently concluded that Grun-sten, the expert witness for the defense was more convincing than McClendon, Wahden’s chiropractor, or Vogel, his neurosurgeon. We find no abuse of discretion on the part of the jury particularly in light of the inconsistencies in Wahden’s and McClendon’s testimony and the consistency in Grunsten’s testimony.
There is ample evidence in the record for the jury to reasonably conclude that Wahden suffered serious prior accidents for which he never fully recovered and that he did not in fact suffer any aggravation of pre-existing injuries as the result of the March accident.
Wahden also sought property damage as well as damages for personal injury. He also asserts as error the jury’s failure to award him damages for his van.
Caroline Sanders, Christopher Sanders’ mother and the owner of the car, testified that she arrived at the accident scene shortly after the accident and that she looked at the damage on the vehicle driven by Wah-den and did not see any. She took photographs the morning after the accident of Wahden’s van at the place where the vehicle had been towed. She took pictures of the back and front of his van, but none of the underside.
Introduced into evidence was a statement from an adjuster from Allstate Insurance Company describing the repairs as follows: “Replace rear step bumper and bracket; repair rear cross member and align” for a total of $235.32. In addition, a copy of a draft issued from Allstate to Wahden dated March 13, 1984 for property loss occurring on March 2, 1984 in the amount of $235.32 was also introduced into evidence.
Wahden, however, testified that he chose not to cash the draft. He testified that his damages were greater than that amount— *866 that while there was no significant physical damage to the outside of the van, there was damage underneath. He testified that he disagreed with the damage estimate by Allstate and that he brought his van to two other shops for estimates. He reported that they gave estimates of from $7-800 to repair. However, he did not introduce into evidence any of these estimates. He stated that he never repaired the van and that he sold it in June 1985. He doesn’t know whether the van was repaired. He surmised that it affected the sale by $1,000.00.
The jury apparently concluded that Wahden had in fact been paid for property damage and also that he did not meet his burden in proving a higher amount of damage than $235.32.
Accordingly, for the reasons stated the judgment in favor of Christopher Sanders and Carolyn Sanders and against Roger Wahden is affirmed at appellant’s cost.
AFFIRMED.

. Wahden originally filed suit against defendants, Christopher Sanders, Carolyn Sanders, Wallace Weicks, Wilda C. Jan (also referred to as Jay), Jan Engineering, Inc., (also referred to as Jay), and XYZ Insurance Company. On February 25, 1986 a partial motion to dismiss was granted dismissing without prejudice defendants Wilda C. Jay and Jay Engineering, Inc. Trial proceeded February 24th, 25th and 26th, 1986 against Christopher Sanders, Carolyn Sanders and Allstate Insurance Company. Wallace Weiks never filed an answer to the petition.

. The jury interrogatories only inquired as to Christopher Sanders negligence; no mention was made of any other defendant.

. We note that appellant does not object to the instruction given at trial relative to a pre-exist-ing injury but rather that the jury ignored that instruction. For the reasons discussed herein we conclude that the jury did not abuse its discretion by failing to find that Wahden proved the aggravation of a pre-existing condition of the evidence. Smith v. New York Fire & Marine Underwriters, et al, 182 So.2d 741 (La.App. 1st Cir.1966), writ denied 185 So.2d 221 (La.1966); Stevens v. Gulf American and Casualty Fire Co., 317 So.2d 199 (La.App. 1st Cir.1975), writ denied 321 So.2d 363 (La.1975); Comeaux v. Barksdale, 342 So.2d 1181 (La.App. 1st Cir. 1977); Jefferson v. Landwehr, 409 So.2d 351 (La.App. 1st Cir. 1981), writ denied 413 So.2d 498 (La.1982); Berthelot v. Imes, 459 So.2d 1384 (La.App. 1st Cir. 1984).