304 So.2d 855 (1974)
Martha JOHNSON
v.
Larry CEASER and New Orleans Public Service, Inc.
No. 6504.
Court of Appeal of Louisiana, Fourth Circuit.
December 10, 1974.
*856 Kohlman & Kohlman, Herman S. Kohlman, Helen S. Kohlman, New Orleans, for plaintiff-appellee.
A. R. Christovich, Jr., New Orleans, for defendants-appellants.
Before STOULIG, MORIAL and BOURG, JJ.
MORIAL, Judge.
New Orleans Public Service, Inc. and Larry Ceaser appeal a judgment of the district court awarding plaintiff, Martha Johnson, $13,090.00 including general damages of $12,000.00 for injuries resulting from an accident as she boarded a streetcar. We affirm.
On September 30, 1971, Mrs. Martha Johnson boarded a streetcar owned by the defendant New Orleans Public Service, Inc. at about 4:00 P.M. at the corner of Napoleon Avenue and St. Charles Avenue. She was the last person in a group of people to board the streetcar. As she boarded, the streetcar started forward and her right upper arm was caught in the closing door on the rear platform. Larry Ceaser was the streetcar conductor. Plaintiff screamed and after a period of time, the conductor opened the door.
Defendants question their liability and contend the plaintiff has not met the burden of proof. Further, defendants contend the award is excessive for plaintiff's injuries.
Plaintiff argues the award is inadequate and should be increased. Has the plaintiff met the burden of proving that defendant-conductor closed the door on her arm? We think so.
Plaintiff testified that her arm was caught in the closing door laterally from her shoulder past her elbow. She made several hard jerks on the arm in an attempt to free it before she realized she could not, and screamed for the conductor to open the door. Defendants' witnesses, Katherine Ledet who was a passenger on the streetcar, and Larry Ceaser, defendant-conductor, testified that some part of plaintiff's arm or clothes was stuck in the *857 door. We agree with the trial judge that defendant-conductor was negligent in his action of closing the door. Defendants produced no evidence to show contributory negligence on the part of plaintiff.
The district court awarded plaintiff $12,000.00 for general damages. In reasons for judgment the court stated $12,000.00 was awarded for the twofold condition which was precipitated by the accident. The district court concluded as we do that the plaintiff undoubtedly had a strain of the shoulder and neck muscles for at least a ten month period and an aggravation of a degenerative arthritic condition, which had been dormant until it was activated by this trauma.
Plaintiff's first medical expert was Dr. David W. Aiken. He was the treating physician and qualified as an expert in surgery. Dr. Aiken testified the plaintiff had received a contusion and sprain of the right elbow. Plaintiff sprained her shoulder by trying to extricate her arm in a sudden reflex manner. In the process she pulled her neck muscles and sprained her neck. When he first saw her on October 12, 1971, he found a marked tenderness in the right upper trapezius muscle and some tenderness in the other higher posterior cervical muscles on the right side accompanied by considerable spasms. Dr. Aiken prescribed a cervical collar to be worn by the plaintiff. Plaintiff was treated by Dr. Aiken with physiotherapy consisting of infrared heat followed by the use of ultra sound. X-rays taken by Dr. Aiken at that time showed arthritic changes in the acromio-clavicular joint. He stated plaintiff's progress in healing during November and December was very slow, but the tenderness did diminish in the back of her neck and trapezius area. On plaintiff's visit on December 1, 1971, Dr. Aiken noted tenderness of the deltoid muscle and the right ulna nerve at the elbow. Plaintiff still complained of pain in the elbow through the right shoulder to her neck. She continued on medication for pain associated with osteoarthritis, and medication for muscle spasm and nervousness. On plaintiff's January 1972 visit, Dr. Aiken observed that her condition had worsened. He referred her to Dr. Salvador LaRocca, an orthopedic surgeon, for treatment.
Dr. LaRocca the second treating physician and an orthopedic surgeon also testified. His January 1972 findings coincide with those of Dr. Aiken, i. e., he found tenderness in the muscles in the back of the neck and trapezius area accompanied by spasms. There was a marked tenderness in the acromio-clavicular region and tenderness in the ulna nerve in the region of the right elbow joint. He testified that X-rays provided by Dr. Aiken demonstrated degenerative changes in the acromio-clavicular joint and showed degenerative changes in the right elbow with the presence of small ossicles in the joint. Dr. LaRocca testified that while the arthritic changes in the C-3-4 and C-6-7 predated the trauma that it could have made them symptomatic. He stated symptoms of pain could reasonably be produced when stress was applied to a not normal or unhealthy joint. Further, he testified that an arthritic problem is one in which there are recurring episodes of pain. [Plaintiff was treated by Dr. LaRocca with physical therapy in March, April and May consisting of 30 treatments at the Tulane University Medical School.]
Defendants' expert in orthopedic surgery, Dr. Hyman Soboloff, saw plaintiff on May 9, 1972. She demonstrated some degree of tightness on the right side when she turned her neck to the right and also a soreness and tightness at the extreme external rotation of the shoulder. He thought therapy should be applied vigorously for another month and thereafter he expected to find no residuals from the injury. Dr. Soboloff, however, agreed with Drs. Aiken and LaRocca that trauma superimposed on plaintiff's preexisting arthritic condition could aggravate or make symptomatic a formerly unsymptomatic condition.
Creola Barnes, a friend of plaintiff, and plaintiff's daughter, Ethel Mae Johnson, *858 testified that before the accident plaintiff was an active and alert person. They testified that after the accident the plaintiff stopped going downtown; stopped doing church work; and stopped visiting her daughter and grandchildren. That, after the accident, she appeared nervous and upset on many occasions and continually complained of a lack of strength in her right arm and hand.
Plaintiff's treatment consisted of 26 office visits and 12 physical therapy treatments by Dr. Aiken and 15 office visits and 30 physical therapy treatments at Tulane Rehabilitation Unit prescribed by Dr. LaRocca plus the examination by Dr. Soboloff.
It is apparent to us from the medical evidence that the trauma to plaintiff's neck, shoulder, right arm, and elbow aggravated her preexisting arthritic condition which, on periodic occasions, will cause varying amounts of pain and stiffness in the injured areas throughout the remainder of plaintiff's life. A tortfeasor takes his victim as he finds him. Deville v. United States Fidelity & Guaranty Co., 258 So.2d 694 (La.App., 3rd Cir. 1972). Therefore, it is only necessary for the plaintiff to prove that an accident was a contributing factor in the aggravation of a preexisting condition in order to recover. Accordingly, plaintiff is entitled to damages for the aggravation of her preexisting arthritic condition.
Article 1934(3) of Louisiana Civil Code provides:
"* * * In the assessment of damages under this rule, as well as in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury."
In Miller v. Thomas, 258 La. 285, 246 So. 2d 16 (1971) our Supreme Court stated the rule of appellate review of quantum of damages as follows:
"* * * From these decisions, two principles emerge: (1) To modify the amount of an award for general damages, an appellate court must find that the trial judge or jury has abused the `much discretion' accorded by the codal provision; (2) The awards in other cases serve only as an aid in determining whether there has been an abuse of discretion and rivet no steel frame of uniformity."
Applying the quoted principles we are unable to hold that the trial judge abused his "much discretion" in making the award presented for review. An award of $12,000.00 for the injuries plaintiff sustained is not excessive nor inadequate. cf. Stoltz v. Continental Insurance Company, 231 So.2d 443 (La.App. 4th Cir. 1970) and Allen v. Liberty Mutual Insurance Company, 280 So.2d 614 (La.App. 4th Cir. 1973).
The judgment of the district court is affirmed.
Affirmed.