332 So.2d 596 (1976)
Sylvian ROMERO, Plaintiff-Appellee,
v.
FLO-TEL, INC., et al., Defendants-Appellants.
No. 5461.
Court of Appeal of Louisiana, Third Circuit.
May 26, 1976.
*597 J. Winston Fontenot, Joseph A. Koury, Lafayette, for plaintiff-appellee.
Davidson, Meaux Oneband & Donohoe, by Ken Williams, Lafayette, for defendants-appellants.
Before DOMENGEAUX, WATSON and GUIDRY, JJ.
GUIDRY, Judge.
Plaintiff, Sylvian Romero, instituted this suit against defendants, Mary Hewell, Flo-Tel, Inc., and the latter's insurer, Travelers Insurance Company (hereinafter referred to as "Travelers"), seeking damages for personal injuries. The plaintiff's alleged injuries were sustained as a result of a two car collision between the automobile in which he was riding as a guest passenger, and being driven by one, Livingston Hayes, and a vehicle owned by Flo-Tel, Inc., insured by Travelers, and being driven by Mary Hewell. The defendant filed a third party action against the driver of the other vehicle, Livingston Hayes, claiming that his negligence was the sole and proximate cause of the accident, alternatively asking for contribution from Hayes as a joint tortfeasor. The defendants appeal from a judgment rendered on a jury verdict which found them solely responsible for plaintiff's injuries and which dismissed their third party demand against Livingston Hayes. The plaintiff was awarded $12,500.00 in damages.[1]
The uncontested facts show that the collision occurred at approximately 6:25 P.M., on May 13, 1973. Immediately prior to the accident, Livingston Hayes, third party defendant, with his guest passenger, Sylvian Romero, plaintiff, was travelling in an easterly direction on Louisiana Highway 94, a two lane thoroughfare just outside the city limits of Lafayette. The defendant, Mary Hewell was travelling in a westerly direction on the same highway. The accident ensued when Ms. Hewell, in *598 attempting to complete a left turn across the eastbound lane of travel was struck by the Hayes vehicle.
Defendants contend that the record shows the accident in question occurred at a point off the roadway and that Mary Hewell had actually completed her turn when she was struck some two feet beyond the traveled portion of the highway.
The testimony of Livingston Hayes and Sylvian Romero indicates that the point of impact occurred within Livingston Hayes' lane of travel. Their testimony in this regard is corroborrated by the investigating officer, Trooper Leroy Dugas, who arrived at the scene shortly after the accident happened. He determined, from the debris on the roadway and the position of the cars after the accident, that the collision occurred in the eastbound lane of travel, near the edge of the roadway. Livingston Hayes further testified that prior to the accident he was traveling at 30 miles per hour, and as he approached within 10 or 15 feet of the oncoming vehicle driven by Mary Hewell, he noticed she began to execute a left turn. He immediately applied his brakes. This testimony was uncontradicted.
Mary Hewell testified that she was unaware of the oncoming Hayes vehicle, and did not see his automobile until it hit her.
We determine as did the trial jury that the accident occurred in the eastbound lane of Louisiana Highway 94 and not beyond the traveled portion of the highway as contended by defendants.
It is well established in our law that a left turning motorist has a duty to signal his intention to turn and also to be alert to oncoming traffic and not to attempt such a maneuver without first ascertaining that the left turn can be made safely. Hollier v. Gilder, 306 So.2d 475 (La. App. 3rd Cir., 1975); Magenta v. Fireman's Fund Insurance Company, 384 So.2d 839 (La.App. 4th Cir., 1973); Scrantz v. Aetna Casualty & Surety Company, 281 So.2d 820 (La.App. 1st Cir., 1973); Young v. DeVillier, 282 So.2d 738 (La.App. 3rd Cir., 1973). R.S. 32:104. Mary Hewell, by her own admission, failed to see the Hayes' vehicle and clearly was negligent in not seeing what was there to be seen. Ms. Hewell was clearly negligent in failing to determine that her left turn could be made safely and such negligence was as found by the jury the sole and proximate cause of the accident that resulted. We discern no negligence on the part of Livingston Hayes, driver of the other vehicle.

DAMAGES
The plaintiff's first medical expert to testify was Dr. Boring Montgomery, his treating physician. Dr. Montgomery, a general practitioner, first saw the plaintiff on May 14, 1973, the day after the accident. At this time the physician found that the plaintiff had tenderness and spasticity in the posterior and lateral cervical muscles and in the trapezius muscles. Motion in the head was practically impossible and the plaintiff was suffering a severe sprain of the cervical spine. X-rays taken showed the presence of an osteoarthritic condition and a narrowing of the discs. Dr. Montgomery prescribed muscle relaxants and heat treatments. Dr. Montgomery discharged the plaintiff in September, 1975.
Dr. Byron Unkauf, an orthopedic surgeon, saw plaintiff on April 9, 1975. Dr. Unkauf found that there was an aggravation of the pre-existing osteoarthritis, together with a partial tear of the trapezius muscle, which at the time of his examination had healed. This orthopedic specialist stated that the plaintiff's disability was minimal, and certainly no more than 10% but that due to his age, and his performance of some strenuous physical labor, the plaintiff was more prone to have a re-occurrence of his disability.
The defendant's only medical expert, Dr. Fred Webre, an orthopedic surgeon examined *599 the plaintiff on October 23, 1974. His examination revealed limited motion of the neck in all areas, but found this to be compatible with his osteoarthritic findings. Dr. Webre testified that in view of the plaintiff's injury on May 13, 1973, he thought that this accident could have aggravated the existing condition.
Unquestionably the medical testimony established that at the time of the accident the plaintiff, Sylvian Romero, had a degenerative osteoarthritic condition. It is apparent to us from the testimony that the plaintiff injured his neck, cervical muscles and trapezius muscles in the accident and that as a result his preexisting condition was not only aggravated but it was activated. Plaintiff, previous to the accident had never sought any medical treatment in this regard, nor was he aware of the presence of his osteoarthritic condition. Subsequent to the collision plaintiff experienced pain in his neck region, limited motion of neck, and tenderness over the trapezius muscles, which required taking heat treatments on a daily basis for about one year.
The law is settled that a tortfeasor takes his victim as he finds him. DeVille v. United States Fidelity & Guaranty Company, 258 So.2d 694 (La.App. 3rd Cir., 1972); Dufrene v. Miller, 266 So.2d 462 (La.App. 4th Cir., 1972) writs refused; Deshotel v. Southern Farm Bureau Casualty Insurance Company, 224 So.2d 191 (La. App. 3rd Cir., 1969).
Applying the principle that the trial court has much discretion in awarding damages we are unable to hold that the jury award of $12,500.00 in general damages was an abuse of discretion. Johnson v. Ceaser, 304 So.2d 855 (La.App. 4th Cir., 1974); Stoltz v. Continental Insurance Company, 231 So.2d 443 (La.App. 4th Cir., 1974).
For the foregoing reasons the judgment appealed from is affirmed. Appellant is cast for all costs.
AFFIRMED.
NOTES
[1] Defendants' appeal is from the judgment rendered in this matter on September 25, 1975 and "which judgment was signed on the 26th day of September 1975". The plaintiff's demand and the defendant's third demand were both submitted to the jury and a verdict was returned on September 25, 1975. The formal judgment on the main demand was signed on September 26, 1975, however the formal judgment dismissing the third party demand was not signed until September 27, 1975. We consider the order of appeal, through it refers only to the signed judgment of September 26, 1975 to have granted defendants a suspensive appeal from both the judgment against them in the main demand and the denial of their third party action.